In re COSMOPOLITAN AVIATION CORP., Debtor.

James BARR, Chapter 11 Trustee of Cosmopolitan Aviation Corp., Plaintiff,

v.

NATIONAL AIRCRAFT SERVICES, INC., Defendant.

Bankruptcy No. 881–82644–18.
Adv. No. 883–0580–18.

United States Bankruptcy Court,
E.D. New York.

Nov. 14, 1983.

Hahn & Hessen, New York City, for trustee.

Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for National Aircraft Services, Inc.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

This is an adversary proceeding brought by trustee against creditor, National Aircraft Services, Inc. ("National"), to recover funds obtained from debtor posited on the contention that the transfer of the funds constituted a voidable preference.

FACTUAL BACKGROUND

On August 11, 1981, Cosmopolitan Aviation Corp. ("Cosmopolitan") filed a voluntary petition under Chapter 11 of the Bankruptcy Reform Act of 1978 ("Code"). Prior to the filing, National obtained a judgment in the United States District Court for the Northern District of Texas against Cosmopolitan in the amount of $81,893.91. On or about April 16, 1981, an authenticated copy of the foreign judgment was docketed in the office of the clerk of Suffolk County, New York. On April 22, 1981, National served an execution upon the sheriff of Suffolk County, which was received by the sheriff on April 25, 1981. On June 25, 1981, the sheriff seized the Cosmopolitan bank account, partially satisfying the judgment by levying upon $10,154.90. The bank account had been previously restrained in April or May of 1981 by the service of a restraining notice pursuant to N.Y.C.P.L.R. § 5222.

On June 24, 1982, a trustee was appointed to administer the property of the bankrupt-

cy estate. On June 28, 1983, the trustee commenced this adversary proceeding by filing a complaint with this court seeking to avoid the transfer of June 25 on the grounds that such transfer was a preference voidable under § 547 of the Code. The summons and complaint were served upon National on June 30, 1983. National interposed its answer on July 29, 1983. A trial was conducted before this court on September 22, 1983. Decision was reserved.

DISCUSSION

A trustee may avoid as a preference the transfer of property of the debtor to a creditor upon proving the five elements of a preference as enumerated in 11 U.S.C. § 547(b). This section provides that:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
>
> (i) was an insider; and
>
> (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
>
> (5) that enabled such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debtor to the extent provided by the provisions of this title.

No allegation has been made that National is an "insider" and thus the appropriate focus is the ninety day period prior to the date of the filing of the petition. (11 U.S.C. § 547(b)(4)(A).) Such period is properly measured by excluding the date of filing and counting ninety days from that date. *In re Grimaldi,* 3 B.R. 533, 1 C.B.C.2d 901 (Bkrtcy.D.Conn.1980); *see In re Fabmet Corporation,* 31 B.R. 414, 8 C.B.C.2d 1220 (Bkrtcy.W.D.N.Y.1983). Therefore, any transfer to National from May 18, 1981 to the date of filing may be avoided if otherwise meeting the criteria set forth in § 547(b).

The trustee urges upon this court that the levy by the sheriff on June 25, 1981 satisfied the elements of § 547(b) and should thus be set aside. There is no dispute between the parties that the sheriff's levy was a "transfer" under this section. The broad language of 11 U.S.C. § 101(40) leaves no doubt as to the correctness of this view. Section 101(40) states that a "transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." *See In re Riddervold,* 647 F.2d 342, 4 C.B.C.2d 517, 7 B.C.D. 921 (2d Cir. 1981).

In addition, there is no dispute that the first and second elements of a preference have been met. § 547(b)(1), § 547(b)(2). With respect to the third requirement (§ 547(b)(3)) that the transfer occurred while debtor was insolvent, this court finds that National has not rebutted the presumption of insolvency set forth in § 547(f). *See In re Briarbrook Development Corp.,* 11 B.R. 515, 4 C.B.C.2d 871 (Bkrtcy.W.D.Mo.1981); *In re National Buy-Rite, Inc.,* 7 B.R. 407, 3 C.B.C.2d 431 (Bkrtcy.N.D.Ga.1980). The parties are in further agreement that the transfer at issue herein occurred within the preference period and thus the fourth element has been met.

The parties are in dispute as to whether the trustee has carried his burden of proof on the fifth element of a preference, to wit: has the transfer resulted in the creditor receiving a greater percentage of the debt-

or's estate than it would have otherwise received under a hypothetical liquidation? *See* 11 U.S.C. 547(b)(5); *In re Conn*, 9 B.R. 431 (Bkrtcy.N.D.Ohio 1981); *In re Pritchard Co.*, 17 B.R. 508, 6 C.B.C.2d 63 (Bkrtcy.S.D. Ala.1981). This divergence between the parties rests upon their differing perception of the legal effect of National's delivery of a writ of execution to the sheriff of Suffolk County. National asserts that it had acquired a lien on the Cosmopolitan bank account by virtue of its delivery of the execution and thus had achieved secured status under § 506 of the Code prior to the date of the transfer and outside of the period in which such security interest could be avoided by the trustee. It thus reasons that for the trustee to meet his burden he must prove that National would not have received the full value of its collateral upon a hypothetical liquidation.

Alternatively, the trustee premised his offer of proof at trial on the proposition that National did not acquire a lien on the bank account by virtue of the delivery of an execution to the sheriff. Therefore National had no security interest in the bank account and thus occupies the status of a general unsecured creditor. Consistent with this position, the trustee introduced evidence by Charles D. Raich, the accountant for the trustee, that if the assets of the estate were to be liquidated, there would exist no assets for distribution to general unsecured creditors. Tr. 9/22/83 at 38. The trustee offered no proof as to the amount to which National would have been entitled as a secured creditor upon a hypothetical liquidation.

■ Thus, the pivotal issue to be resolved in this case is whether National acquired a lien against Cosmopolitan's bank account by delivery of an execution to the sheriff. A determination of when a lien is created depends upon state law. 4 Collier on Bankruptcy ¶ 547.12 (15th ed. 1983); *Powers v. Johnson*, 71 F.2d 48 (8th Cir.1934), *cert. denied* 293 U.S. 596, 55 S.Ct. 111, 79 L.Ed. 689 (1934); *Westmoreland v. Dodd*, 2 F.2d 212 (5th Cir.1924); *Yumet & Co. v. Delgado*, 243 F. 519 (1st Cir.1917).

■ Under New York law, it is settled that a judgment becomes a lien on personalty when an execution is delivered to the sheriff. *Knapp v. McFarland*, 462 F.2d 935 (2d Cir.1972); *Adler v. Greenfield*, 83 F.2d 955 (2d Cir.1936); *Corrigan v. United States Fire Insurance Company*, 427 F.Supp. 940 (S.D.N.Y.1977); *In re Lucasa International, Ltd.*, 13 B.R. 596, 4 C.B.C.2d 1190, 7 B.C.D. 1356 (Bkrtcy.S.D.N.Y.1981); *Art-Camera-Pix, Inc. v. Cinecom Corporation*, 64 Misc.2d 764, 315 N.Y.S.2d 991 (S.Ct.N.Y.Co.1970); *Meyerhardt v. Heinzelman*, 71 N.Y.S.2d 692 (S.Ct.N.Y.Co.1947); *see also In re Riddervold, supra*.

Notwithstanding the fact that numerous New York courts have characterized the rights of a judgment creditor obtained by delivery of an execution as a "lien," the trustee contends that such an interest is not a lien, as defined in 11 U.S.C. § 101(28), sufficient to justify secured status under 11 U.S.C. § 506. The trustee offers no support for this proposition.

■ Section 101(28) of the Code defines lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." It is clear that an execution creditor in New York possesses certain interests in or charges against the debtor's property as against certain transferees and other execution creditors by virtue of sections 5202 and 5234 of the N.Y.C.P.L.R. and thus obtains a lien under § 101(28). *See also In re Baum*, 15 B.R. 538, 5 C.B.C.2d 745 (Bkrtcy.E.D.Va. 1981) (the delivery of a writ of fieri facias constitutes a judicial lien).

Section 506(a) of the Code states in relevant part: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest." The use by Congress of the term "lien" without qualification indicates a legislative intent that such term be defined in accordance with § 101(28). *In re Tanner*, 14 B.R. 933, 5 C.B.C.2d 503, 8 B.C.D. 347 (Bkrtcy.W.D.Penn.1981).

■ Thus, this court finds that National acquired a lien on Cosmopolitan's bank account entitling it to secured status under § 506. Predicated upon the fact that National acquired its interest in Cosmopolitan's property on April 25, 1981, prior to the preference period, such interest acquired may not be avoided under § 547. *See In re Staples,* 1 F.Supp. 620 (N.D.Okla.1932); *In re Riddervold, supra.*

■ The trustee thus has the burden, in avoiding the transfer of June 25, 1983, of proving that such transfer resulted in National obtaining a sum greater than that available to National on hypothetical liquidation. The trustee has demonstrated only that no funds would be available to a general unsecured creditor. The trustee has thus failed to prove that the transfer to National resulted in National receiving a greater percentage of the bankruptcy estate than it would have received upon hypothetical liquidation as required under § 547(b)(5).

It remains to be determined, however, whether National's lien under N.Y.C.P.L.R. § 5202 can withstand attack by the trustee on any other ground.

Section 544(a) of the Code provides:

Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

The status of the trustee as conferred under this section has been described as that of "the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." *In re Waynesboro Motor Co.,* 60 F.2d 668 (S.D. Miss.1932); *cited in* 4 Collier on Bankruptcy ¶ 544.02 at 544–4, 544–5 (15th ed. 1983).

■ Notwithstanding this broad grant of power to the trustee, it is well settled that the trustee does not have the rights of a bona fide purchaser of personalty. *In re James, Inc.,* 13 Am.B.R. 304, 30 F.2d 555 (2d Cir.1929) (decided under a predecessor provision to 11 U.S.C. § 547(a)); 4B Collier on Bankruptcy ¶ 70.52 at 628–33 (14th ed. 1982). Moreover, subsections 544(a)(1) and 544(a)(2) do not specifically confer upon the trustee bona fide creditor status with respect to personalty. This omission is underscored by the grant of such status to the trustee under subsection 544(a)(3) with regard to real estate.

■ N.Y.C.P.L.R. § 5202 establishes that an execution creditor possesses a claim superior to all transferees except certain transferees for fair consideration. Certainly, a transferee for fair consideration does not occupy a status superior to that of a bona fide purchaser and may under most circumstances qualify as a bona fide purchaser. Thus, the trustee would be unable under his augmented powers set forth in § 544(a) to obtain priority over National, an execution creditor, under N.Y.C.P.L.R. § 5206. *See* 4B Collier on Bankruptcy ¶ 70.64 (14th ed. 1982).

The trustee's position is most enhanced with respect to National by invoking subsection 544(a)(1) which gives to him judicial lien creditor status as of the date of filing of the petition. It has already been established that a judicial lien on personalty is acquired in New York by the delivery of an execution upon the sheriff. However, the power conferred by this subsection is still insufficient to avoid the transfer to National.

N.Y.C.P.L.R. § 5234(b) states:

Priority among execution creditors. Where two or more executions or orders of attachment are issued against the same judgment debtor and delivered to the same enforcement officer, they shall be satisfied out of the proceeds of personal property or debt levied upon by the officer in the order in which they were delivered. Where two or more executions or orders of attachment are issued against the same judgment debtor and delivered to different enforcement officers, and personal property or debt is levied upon with the jurisdiction of all of the officers, the proceeds shall be first applied in satisfaction of the execution or order of attachment delivered to the officer who levied, and thereafter shall be applied in satisfaction of the executions or orders of attachment delivered to those of the other officers who, before the proceeds are distributed, make a demand upon the officer who levied, in the order of such demands. An execution or order of attachment returned by an officer before a levy or delivered to him after the proceeds of the levy have been distributed shall not be satisfied out of those proceeds.

Under this section, National, by virtue of its prior delivery of an execution to the sheriff, enjoys a priority in the distribution of the assets seized pursuant to the execution.

As a final note, National has introduced evidence that it had served upon Cosmopolitan's bank a restraining notice pursuant to N.Y.C.P.L.R. § 5222 "at some point in or about April or May of '81." Tr.

9/22/83 at 18. However, such service would not create a lien on Cosmopolitan's property. The New York Court of Appeals has determined that the "service of a C.P.L.R. restraining notice confers no priority upon the judgment creditor in the form of a lien on the judgment debtor's property." *Aspen Industries, Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 439 N.Y.S.2d 316, 319, 421 N.E.2d 808 (1981); *In re Nassau Expressway Borough of Queens*, 56 Misc.2d 602, 289 N.Y.S.2d 680 (S.Ct. Queens Co. 1968); *New York v. Panzirer*, 23 A.D.2d 158, 259 N.Y.S.2d 284 (1st Dept.1965).

Accordingly, while the service of a restraining notice created no lien upon Cosmopolitan's bank account, the delivery of an execution did constitute such a lien on its personalty. Consequently, the trustee was required to demonstrate that the sum received by National exceeded that to which National would have been entitled as a secured creditor upon hypothetical liquidation. The trustee has failed to meet this burden and has thus failed to establish a voidable preference. For this reason, judgment must be rendered in favor of the defendant, National.

SETTLE JUDGMENT.